Michael BOURGAL and Theodore King, as Trustees of Local 282 International Brotherhood of Teamsters, Welfare, Pension and Annuity Trust Funds, Plaintiffs,

v.

LAKEWOOD HAULAGE INC. and Frank Loguidice, Defendants.

No. CV–92–3719.

United States District Court, E.D. New York.

July 23, 1993.

Avram H. Schreiber, New York City, for plaintiffs.

Robert M. Ziskin, Commack, NY, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiffs Bourgal and King, in their roles as Trustees of Local 282 International Brotherhood of Teamsters Welfare, Pension and Annuity Trust Funds (the "Funds"), filed the complaint in this action on August 6, 1992. That complaint alleges that defendants Lakewood Haulage, Inc. ("Lakewood") and Frank Loguidice,[1] a Lakewood officer, failed to make various payments owed to the above funds as fringe benefit contributions and delinquency charges. Plaintiffs claim that defendants, in not making these payments, violated their collective bargaining agreement as well as the Employee Retirement Income Security Act of 1974 ("ERISA").

On December 18, 1992, plaintiffs moved for an order: (1) granting summary judgment against Lakewood in the total amount of $52,680.12, with interest at 16% per annum on $28,157.79 from December 20, 1992; (2) severing the action as to Loguidice; (3) granting attorneys fees in the amount of 25%

---

1. Various affidavits refer to Mr. Loguidice as both "Frank" and "Fred"; hereinafter, this court will refer to him only as Mr. Loguidice.

of the outstanding sums owed; and (4) finding defendants in contempt of court for violating a July 1992 order of Judge Amon in a related case. The parties entered into a Stipulation of Settlement on February 18, 1993, resolving all matters between them save for the issue of contempt and the amount of reasonable attorneys fees. That Stipulation, "So Ordered" by this court on February 22, 1993, provides in full as follows:

1. Defendant Lakewood Haulage Inc., pursuant to the Declaration of Trust which is incorporated by reference in its Collective Bargaining Agreement with Local 282 I.B. of T. is obligated to pay delinquency charges, inter alia, as follows with respect to unpaid fund contributions:

a) Interest at the rate of sixteen (16) per cent per annum,

b) Liquidated Damages at the rate of twenty (20) per cent.

2. Lakewood Haulage Inc. acknowledges that they are responsible for the attorneys fees incurred by Plaintiffs.

3. Based upon the above, for the months of June through November 1992, there is due and owing in principal contributions the sum of $39,005.85. In addition to this amount, and calculated in accordance with the terms of the Declaration of Trust, through December 20, 1992, there is due and owing interest in the sum of $1,413.77 and the sum of $7,801.16 in liquidated damages ($39,005.85 × 20%).

4. In addition, Defendant failed to pay, in a timely fashion, contributions for December 1991, January 1992 and April 1992 for which interest has been paid.

In this connection, pursuant to the terms of the Declaration of Trust, for the months of December 1991 and January 1992, there is due liquidated damages in the sum of $3,073.10 and for the month of April 1992 liquidated damages in the sum of $2,663.17.

5. *That the sole issues remaining to be determined by this Court is the amount of attorneys fees to be included in the judgment and Plaintiffs request to punish for contempt.*

6. That Defendant Lakewood Haulage Inc. consents to the entry of judgment in favor of Plaintiffs in the amount of $53,-957.05, together with the reasonable attorneys fees as found by the Court, costs and disbursements.

7. That the question of the reasonable attorneys fees and the request to punish for contempt shall be decided by this Court on submission.

8. The parties agree, that pending the submission of the original of this stipulation, that a facsimile copy with facsimile signatures, shall be acceptable.

(Emphasis added). Judgment in the amount of $54,189.05 was entered on April 21, 1993.

On July 23, 1993, plaintiffs moved for an order compelling Lakewood to comply with a subpoena duces tecum dated May 24, 1993 which required a representative of Lakewood to appear on June 21, 1993 with certain books or records and for attorneys fees incurred in making that motion. Although plaintiffs agreed to adjourn the requested deposition, they conditioned their consent on receipt of certain financial documents which, defendant's attorney admits, his client never transmitted. (Affirmation of Robert M. Ziskin, dated July 18, 1993, at ¶¶ 9–10). Despite being informed that defendant would not be available for the June 21st deposition, plaintiffs' counsel nevertheless scheduled a court reporter for that date. Plaintiffs thereafter brought this motion to compel.

Defendant excuses its failure to produce the requested documents, books, and records and its failure to send a representative for deposition based on the fact that Mr. Loguidice, allegedly the sole representative of Lakewood Haulage, was not physically capable of appearing at the deposition. (*Id.* at ¶ 14). Plaintiffs respond that Mr. Loguidice not only appeared on May 13, 1993 at a deposition to aid in the enforcement of a judgment entered in another matter before this court, but also testified at that deposition that his wife, Mrs. Lorretta Loguidice, was the Lakewood bookkeeper and therefore had some knowledge of the Lakewood operation.

For the reasons described below, this court declines to award attorneys' fees in the amount of 25% of outstanding obligations and instead directs payment of attorneys fees pursuant to contemporaneous time sheets

submitted by plaintiffs' attorney. Plaintiffs' motion to compel compliance with the subpoena is granted but their request for fees in connection with bringing that motion is denied. Finally, their motion to hold defendant in contempt is denied at this time.

### DISCUSSION

I. *Attorneys Fees Under 29 U.S.C. § 1132(g)*

■ There is no dispute that Lakewood Haulage entered into a collective bargaining agreement with Local 282 I.B.T. covering the period between July 1, 1990 through June 30, 1993. Under the Agreement, Lakewood Haulage was required to report and pay fringe benefit contributions on a monthly basis to plaintiff Funds. (Affidavit of Teresa Cody, Director of Collection for Plaintiff Funds, dated December 18, 1992, at Exh. A). In addition, pursuant to Section 13(G) of the Agreement, defendant agreed to be bound to the terms of the Trust Agreements governing the various Funds. (*Id.* at ¶ 5 & Exh. A).[2]

Article VI, Section 3, of the Declaration of Trust provides that where an employer fails to report and make payments in a timely fashion, that employer is obligated to pay designated late charges as follows:

interest, at the rate specified in Section 5–501 of the General Obligations Law of the State of New York[;] ... *Attorney's fees in collections involving Suit or other Court Proceedings pursuant to Sections 502(g)(2) and 515 of ERISA, or otherwise [at the rate of] 25% of contributions and interest due [on claims over $500.00;]* ... Auditor's fees [; and] Liquidated damages equal to the greater of: (1) the amount of interest charged on the unpaid contributions, or (2) 20% of the unpaid contributions.

(*Id.* at ¶ 5 & Exh. 2). Based on this provision, plaintiffs argue that defendant owes to them $10,104.91 in attorneys fees for having to institute this action.[3] Although Lakewood admits owing attorneys' fees to plaintiffs, it argues that the requested amount—25% of contributions and interest due and owing—is inappropriate since plaintiffs' counsel did not spend such time as would justify such fees. Without citing any case law, defendant makes the following argument in its Memorandum of Law:

29 U.S.C. Section 1132(g)(2)(D) in relevant part provides that a Court shall award to a multi-employer Benefit Plan "reasonable attorneys' fees and costs of the action ..." In the circumstances of this case, there is no basis to award Mr. Schreiber the sum of $10,104.91. When dealing with similar matters it has been the undersigned's experience that the Court would ascertain plaintiffs' hourly rate and determine if same was in accordance with generally accepted hourly rates charged for similar work within the Eastern District. In such cases, plaintiffs' counsel has been required to break down that portion of the work which partners and associates and paralegals performed. Additionally, counsel was required to set forth the respective rates of partners, associates and paralegals who participated in the instant law suit.

Section 515 of ERISA, 29 U.S.C. § 1145, provides:

Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

---

**2.** That section provides in relevant part:
(G) The Trust agreements governing the Local 282 Welfare, Pension, Annuity and Job Training Trust Funds, as they shall be amended from time to time, are hereby made a part of this Agreement with the same force and effect as if fully incorporated herein, and the Employer and the Union hereby agree that upon the execution of this Agreement they shall be deemed parties to said Trust Agreements.

**3.** That number derives from the sum of $7,343.16 from the original motion papers, (*Id.* at ¶ 10), and $2,761.75 from the supplemental affirmations. (Supplemental Affirmation of Avram H. Schreiber, dated February 1, 1993, at ¶ 8). Both numbers are computed from outstanding sums owed.

And 29 U.S.C. § 1132(g), the section to which both parties cite, provides in relevant part:

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) *reasonable attorney's fees and costs of the action, to be paid by the defendant,* and

(E) such other legal or equitable relief as the court deems appropriate.

For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none is provided, the rate prescribed under section 6621 of Title 26.

Once liability is established, the remedies under Section 1132(g) are mandatory. *Benson v. Brower's Moving & Storage, Inc.,* 726 F.Supp. 31, 36 (E.D.N.Y.1989), *aff'd,* 907 F.2d 310 (2d Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990).

The question presented to this court is whether parties to a freely-bargained collective bargaining agreement may designate "reasonable" attorneys fees as a set percentage of the defendant's outstanding contributions and amounts owed and therefore remove the assessment of reasonableness from the court. Research has not revealed any case discussing this identical question. However, courts have stressed that the determination of a reasonable fee award under Section 1132(g)(2)(D) of ERISA lies within the sound discretion of the district judge. *See, e.g., Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1056–57 (2d

Cir.1989), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990); *Sokolowski on behalf of M.M. & P. Pension Plan v. Aetna Life & Cas. Co.,* 670 F.Supp. 1199, 1208–09 (S.D.N.Y.1987). Furthermore, courts have held that attorney fee awards under ERISA are not intended to be punitive. *Id.* at 1209 (*citing Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 828 (7th Cir. 1984). Finally, the Second Circuit has adopted the lodestar method to determine the amount of attorney's fees to be awarded in ERISA actions. *New York State Teamsters Conference and Retirement Fund v. Erick Sanitation, Inc.,* 1992 WL 246880 *4, 1992 U.S. Dist. LEXIS 14515, *12–13 (N.D.N.Y.1992) (*citing Chambless,* 885 F.2d at 1058–59); *see also Harsch v. Eisenberg,* 956 F.2d 651, 663 (7th Cir.) (recommending use of lodestar method over use of "market rate" contingent fee to calculate fee award in ERISA case), *cert. denied,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). Under this method, a court must multiply the compensable hours by the reasonable rate and make any necessary upward or downward adjustment; the burden is on the fee applicant to establish both the reasonable rate and the number of hours worked. *Id.*

Based on all of the above—the requirement that a court exercise discretion in calculating a fee, the statute's express requirement that a court find such a fee "reasonable," and the understanding that fee awards are not punitive—this court declines to apply automatically the 25 percent fee award provision in the collective bargaining agreement. However, appended as Exhibit B to the Reply Affirmation of Avram H. Schreiber, Esq., dated February 17, 1993, is a computer printout which reflects a contemporaneous record of the billing in connection with plaintiffs' prosecution of this action. This record reflects the date on which services were performed, by whom the services were performed, the services actually performed, the time spent, the amount charged, and various costs connected with the action.[4] *See New York State Association for Retarded Chil-*

---

4. The billing rates are as follows: Partner at $200.00 per hour; Associate at $125.00 per hour; and paralegal at $50.00 per hour.

*dren, Inc. v. Carey,* 711 F.2d 1136, 1154 (2d Cir.1983). Defendant has made no objections to this record. Furthermore, this court has examined the record and finds it to be reasonable. Accordingly, plaintiffs' motion for fees in the amount of $6,040.10 is hereby granted.[5]

### II. *Motion for Contempt*

■ Plaintiffs' motion to hold defendant in contempt arises out of an Order issued by Judge Amon on July 31, 1992 "during the course of a prior litigation" between the parties—*Robert Sasso and Theodore King v. Lakewood Haulage, Inc. and Frank Loguidice,* CV–92–1578 (CBA)—which requires defendant to submit fringe benefit contributions in a timely fashion in accordance with the terms of the parties' collective bargaining agreement. (Schreiber Aff., dated December 18, 1992, at ¶ 3 & Exh. A). In that Order, Judge Amon awarded plaintiffs judgment against Lakewood and Loguidice "in the amount of $3852.52, plus interest in the amount of $128.28, plus costs and disbursements in the sum of $191.00, totaling $4171.40" and stated that "defendant's obligation pursuant to this injunction shall remain in force and effect as long as they are signatory to a Collective Bargaining Agreement with Local 282 I.B. of T. and/or is obligated to pay contributions to the plaintiffs herein pursuant to a Collective Bargaining Agreement, Declaration of Trust or any other obligation to contribution to Plaintiff FUNDS." (*Id.* at Exh. A). Both Lakewood and Loguidice were served with a copy of this Judgment and Permanent Injunction on September 29, 1992. (*Id.* at ¶ 7 & Exh. B). Their attorney was notified of the award on November 5, 1992. (*Id.* at ¶ 7 & Exh. C). Plaintiffs argue that Lakewood should be held in contempt for violating that order.

The Second Circuit requires a court to make the following three findings in order to hold a party in civil contempt:

> A court may hold a party in civil contempt only if there is a clear and unambiguous order, noncompliance is proved clearly and convincingly, and "the defendant has not been reasonably diligent and energetic in

attempting to accomplish what was ordered."

*Drywall Tapers and Pointers, Local 1974 etc. v. Local 530 of Operative Plasterers & Cement Masons International Asso.,* 889 F.2d 389, 394 (2d Cir.1989), *cert. denied,* 494 U.S. 1030, 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990) (*quoting Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). Applying these standards, Judge Amon's Order in this case is clear and unambiguous, and defendant Lakewood admits that it failed to comply with that Order. However, defendant also claims that it does not have the funds to satisfy its obligations. (Ziskin Aff., dated February 10, 1993, at ¶ 8). Furthermore, with the exception of defendant's failure to comply with the subpoena, the evidence submitted to this court demonstrates that the parties in this case have attempted to the best of their abilities to work out this dispute in a reasonable and amicable fashion. And to the extent that plaintiffs had to pursue proceedings before this court in this action, defendant has been held accountable for reasonable fees and costs incurred. Accordingly, this court declines to hold defendant in civil contempt at this juncture. In this regard, it is worthwhile to observe that civil contempt is designed "to coerce a reluctant party to obey a court's directive" and "is appropriate only when 'obedience is within the power of the party being coerced by the order.'" *Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 935 (2d Cir.1992) (*quoting Badgley v. Santacroce,* 800 F.2d 33, 36–37 (2d Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

### III. *Motion to Compel*

As explained above, plaintiffs move to compel defendant Lakewood to comply with a subpoena requiring one of its representatives to appear at a deposition to facilitate enforcement of the outstanding money judgment in this action. At oral argument on this motion, counsel for the parties agreed to a deposition date of August 3, 1993 at 10:00 a.m. to take place in plaintiff's office—a mutually convenient location. Defense counsel admitted that his client, contrary to representations,

---

**5.** $8,249.20 owed less $2,209.10 paid on account. (Schreiber Reply Aff. at Exh. A).

failed to transmit the requested and agreed-upon financial documentation; this court alerted counsel to notify his client that a subsequent failure to appear will result in issuance of an Order to Show Cause why the client should not be held in contempt. This court repeats that representation.

Defense counsel also objected to opposing counsel's practice of noticing depositions without attempting to find a mutually convenient time for both parties. Based on this and other representations at oral argument, this court finds that the parties could have avoided the necessity of bringing this motion to compel through exercise of professional courtesy. Accordingly, it exercises its discretion and declines to award the $1,552.31 in fees and costs incurred in bringing this motion. (*See* Schreiber Aff., dated July 20, 1993, at Exh. C).

### CONCLUSION

For the reasons provided above, reasonable attorneys fees and costs are hereby awarded to plaintiffs under 29 U.S.C. § 1132(g) in the amount of $6,040.10. Plaintiffs' motion to compel is granted as described above and at oral argument, but their request for fees and costs in connection with that motion is denied. Finally, plaintiffs' motion to hold Lakewood in contempt is hereby denied.

SO ORDERED.